# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Colonial Pipeline Company,

                Plaintiff,

v.

AIG Specialty Insurance Company,

                Defendant.

_____/

AIG Specialty Insurance Company,

                Third-Party
                Plaintiff,

v.

Colony Insurance Company and
CECO Pipeline Services Company,
Inc.,

                Third-Party
                Defendants.

_____/

Case No. 1:19-cv-00762

Michael L. Brown
United States District Judge

**OPINION & ORDER**

This insurance coverage dispute arises out of a gasoline leak from a petroleum pipeline operated by Plaintiff Colonial Pipeline Company. Colonial sued its insurer, Defendant AIG Specialty Insurance Company, for failure to cover damages caused by the leak.  AIG then filed a third-party complaint against Colony Insurance Company and CECO Pipeline Services Company, Inc., claiming AIG's coverage obligations do not kick in until Colonial exhausts its coverage under a separate insurance policy issued by Colony.  CECO now moves to dismiss AIG's third-party claims against CECO for lack of subject matter jurisdiction and for failure to state a claim.  (Dkt. 68.)  CECO also moves to supplement its motion to dismiss with new information.  (Dkt. 79.) The Court grants CECO's motion to supplement and denies its motion to dismiss.

## I.    Background

### A.    Facts

Colonial owns and operates a multi-state refined petroleum pipeline system.  (Dkt. 1 ¶ 7.)  In January 2015, Colonial and CECO signed a Master Services Agreement ("Agreement") in which CECO

agreed to perform pipeline maintenance services pursuant to work orders that Colonial issued.  (Dkt. 69-2.)  The Agreement required CECO to obtain "comprehensive liability insurance" for its services.  (*Id.* § 15.)  The Agreement states that CECO's insurance "shall be primary and non-contributory to [Colonial's] insurance or self-insurance program" and that Colonial "shall be named as an additional insured."  (*Id.* § 15(f).)  The Agreement also requires CECO to indemnify Colonial for any damages caused by CECO's negligence.  (*Id.* § 16.)

CECO later worked on Colonial's pipeline pursuant to a work order issued under the Agreement.  (Dkt. 86 ¶¶ 27–28.)  In September 2016, Colonial discovered a leak in the pipeline.  (*Id.* ¶ 24.)  AIG claims the leak was caused by CECO's work.  (*Id.* ¶¶ 27, 33.)  Colonial incurred damages of more than $25 million as a result of the leak.  (Dkt. 1 ¶ 47.)

There were two insurance policies in effect when the leak was discovered.  (*Id.* ¶¶ 9–10, 40.)  Under the first ("AIG Policy"), AIG provided Colonial with pollution liability coverage up to $25 million. (Dkts. 1-1; 86 ¶ 65.)  The policy includes a self-insured retention clause, which states that AIG's coverage obligations do not kick in until Colonial pays $10 million in covered losses.  (Dkts. 1 ¶¶ 22, 46; 1-1 at 6, 36–37.)

The policy also states that its "insurance is primary" and that AIG's "obligations are not affected [by other insurance] unless any of the other insurance is also primary" (in which case AIG will share coverage with the other primary insurers). (Dkt. 1-1 at 18–19, 37–38.)[1] AIG's coverage is excess, however, where (1) the other primary insurance is identified specifically in certain documentation provided by Colonial to AIG, or (2) the loss arises from "a Pollution Condition due to Microbial Matter and/or Legionella pneumophilia." (*Id.* at 38.)

The second insurance policy ("Colony Policy") was issued by Colony to CECO. (Dkt. 86-1.) The policy lists CECO as the named insured but also covers "[a]ny person or organization with whom [CECO] agree[s] to include as an insured pursuant to a written contract." (*Id.* at 2, 19.) The policy provides pollution liability coverage up to $5 million for losses "resulting from [CECO's] work," and includes a duty to defend the insured against claims for damages. (*Id.* at 2, 13, 17, 35; Dkt. 86 ¶ 44.) The policy also says its "insurance applies in excess of . . . other

---

[1] AIG "will share with all such other insurance by the [following] method . . . . If all of the other insurance permits contribution by equal shares, [AIG] will follow this method also . . . . If any of the other insurance does not permit contribution by equal shares, [AIG] will contribute by limits." (Dkt. 1-1 at 37–38.)

insurance" unless "such other insurance is specifically written to be excess insurance over the limits of liability of this Policy." (Dkt. 86-1 at 25.) The policy then says:

> In the event that a written contract, written agreement or permit requires this insurance to be primary for any person or organization that you agreed to insure, and provided such person or organization is an insured under this Policy, this insurance will be primary and we will not seek contribution from any other insurance issued to such person or organization.

(*Id.*)[2]

After discovering the gasoline leak, Colonial sought coverage from AIG for clean-up costs and other related losses. (Dkt. 86 ¶¶ 64, 66.) AIG declined to provide coverage, saying Colonial had not exhausted the $10 million self-insured retention clause. (*Id.* ¶ 67.) AIG also says its coverage obligations are "not triggered until after the limits of the Colony Policy have been exhausted" — and that Colonial has not yet exhausted those limits. (*Id.* ¶¶ 73–74.)

---

[2] The Colony Policy (like the AIG Policy) also says: "If all of the other insurance permits contribution by equal shares, we also will follow such method . . . . If any of the other insurance does not permit contribution by equal shares, we will contribute by limits." (Dkt. 86-1 at 25.)

**B.     Procedural History**

In February 2019, Colonial filed this action against AIG, asserting claims for breach of contract (Count 1) and declaratory judgment (Count 2).  (Dkt. 1.)  The declaratory judgment claim "seeks a declaration of the parties' respective rights and duties under the [AIG] Policy, including, without limitation, that AIG is obligated to pay Colonial's pollution coverage claim."  (*Id.* ¶ 63.)

In June 2019, AIG sought leave to file a third-party complaint for declaratory judgment against CECO and Colony.  (Dkt. 28.) AIG's complaint requests "a declaration of the parties' respective rights and duties under the Agreement, the Colony Policy, and the AIG Specialty Policy," including the following specific declarations:

1. "CECO was obligated to add Colonial as an additional insured under the Colony Policy."

2. "CECO was obligated to ensure that the Colony Policy provided coverage to Colonial on a primary, non-contributory basis with respect to Colonial's insurance and self-insurance program."

3. "Colonial is an additional insured under the Colony Policy."

4. "The [gasoline leak] implicates Coverage A of the Colony Policy."

5. "The Colony Policy provides Colonial with a primary and non-contributory defense obligation for the [gasoline leak]."

6

6. "The Colony Policy provides Colonial with indemnification for the [gasoline leak] on a primary, non-contributory basis."

7. "The Colony Policy is primary and non-contributory to the AIG Specialty Policy with respect to Colonial's coverage for the [gasoline leak], and . . . any obligation that may exist on the part of AIG Specialty to provide coverage to Colonial under the AIG Specialty Policy for the [gasoline leak] is not implicated (if ever) unless and until the limits of the Colony Policy have been fully exhausted."

(Dkt. 86 ¶¶ 76, 79–80.)   Colonial opposed AIG's motion, claiming AIG lacked standing because it was not a party to the Agreement or the Colony Policy.   (Dkt. 32.)   The Court disagreed, found a justiciable controversy existed, and granted AIG's motion on August 5, 2019. (Dkt. 39.)  AIG filed its third-party complaint the next day.  (Dkt. 40.)[3]

About two weeks later, Colonial sued CECO in the Northern District of Alabama, claiming CECO negligently caused the gasoline leak and seeking damages under the Agreement's indemnification clause. (Dkt. 69-1.)   CECO answered that complaint in September 2019. The case remains pending.

In late October 2019, CECO and Colony both filed answers to AIG's third-party complaint.   (Dkts. 53; 54.)   More than three months later,

---

[3] AIG later filed an unredacted version of its complaint.  (Dkt. 86.)

CECO moved to dismiss AIG's third-party claims against CECO for (1) lack of a justiciable controversy under Article III of the U.S. Constitution and (2) failure to state a claim under Rules 12 and 14 of the Federal Rules of Civil Procedure. (Dkt. 68.) In April 2020, CECO moved to supplement its motion with references to Colony's amended answer. (Dkt. 79.)[4]

## II.   Motion to Dismiss for Lack of Article III Jurisdiction

CECO says it should be dismissed from this case for lack of an Article III controversy because "[t]he entirety of AIG's dispute . . . concerns its obligations to Colonial based upon Colony's coverage to Colonial as an additional insured." (Dkt. 68-1 at 4.) AIG says Article III jurisdiction exists because CECO has a "clear and present material interest in whether, when, and to what extent Colonial can recover defense and indemnity expenses for the [gasoline leak] allegedly caused by CECO." (Dkt. 69 at 7.) The Court agrees with AIG.

---

[4] The Court grants CECO's motion to supplement because AIG does not meaningfully oppose it and because CECO could not have included the supplemental information in its earlier briefs.

## A.    Legal Standard

"Article III of the Constitution limits federal courts to adjudicating actual 'cases' and 'controversies.'"  *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. 2019). This case-or-controversy requirement is incorporated explicitly into the Declaratory Judgment Act, which limits declaratory judgments to "case[s] of actual controversy."  28 U.S.C. § 2201(a); *see MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) ("[T]he phrase 'case of actual controversy' in the [Declaratory Judgment] Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III.").  Thus, "[i]n all cases asserting claims under the Declaratory Judgment Act—such as this one—the threshold question is whether a justiciable controversy exists."  *Sundy v. Friendship Pavilion Acquisition Co.*, 2020 WL 1228757, at *3 (11th Cir. Mar. 13, 2020).

"[T]his determination necessarily requires a case-by-case analysis," *Progressive Mountain Ins. Co. v. Middlebrooks*, 2020 WL 897590, at *2 (11th Cir. Feb. 25, 2020), and courts have "not draw[n] the brightest of lines between those declaratory-judgment actions that satisfy the case-or-controversy requirement and those that do not," *MedImmune*,

549 U.S. at 127.  But the dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests."  *Id.*  And it must be "real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *Id.*  "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Id.*

## B.   Discussion

It is well established that an Article III controversy exists where two insurers (AIG and Colony) and a common insured (Colonial) participate in a declaratory action to determine the priority of coverage. *See, e.g.*, *Sparta Ins. Co. v. Vinings Ins. Co.*, 2017 WL 11150830, at *3 (S.D. Fla. Dec. 28, 2017) ("[A] case or controversy exists when an insurer sues another insurer for a declaratory judgment when they share a common insured.").  Our case is like those typical declaratory actions but for one thing:  another insured (CECO) has joined the case, even though its own coverage is not directly in dispute.  The question is whether that

insured (CECO) — who is covered under the same policy as the common insured (Colonial) — is a proper party under Article III.  The Court answered that question in the affirmative (at least on the facts here) by allowing AIG to file its third-party complaint last year.[5]  Other courts have reached the same conclusion under similar facts.

In *Colony National Insurance Co. v. DeAngelo Bros., Inc.*, 2014 WL 1159776 (M.D. Pa. Mar. 21, 2014), a railroad company hired a contractor to work on its railroad system.  *Id.* at *1.  The parties signed a services agreement that included an indemnification clause.  *Id.*  The agreement required the contractor to obtain insurance and to list the railroad company as an additional insured.  *Id.*  The contractor complied.  *Id.* at *2.  An accident later occurred on the railroad.  *Id.* at *1.  The railroad company incurred losses for which it sought coverage under the contractor's insurance policy.  *Id.* at *1–2.  The insurer disputed coverage and filed a federal declaratory action in Pennsylvania against the railroad company and the contractor.  *Id.* at *2.  Another insurer, with potential coverage obligations, later joined the case.  *Id.* at *1 n.1.  The

---

[5] The Court found that AIG's complaint established "a substantial controversy of sufficient immediacy" and that "Defendant should be allowed to pursue its declaratory action."  (Dkt. 39 at 8.)

railroad company then brought an indemnification claim against the contractor in another court. *Id.* at \*2. The indemnification claim said the contractor was liable for the railroad company's losses. *Id.*

The contractor sought to be dismissed from the Pennsylvania action for lack of an Article III controversy. The contractor "argu[ed] essentially that it should be dropped as a party to the Pennsylvania action because it did not have a stake in it, as the Pennsylvania action allegedly concern[ed] only the extent of liability between [the railroad company] and the two insurers." *Id.* at \*3. The court rejected that argument and found a justiciable controversy existed. The court emphasized that the railroad company's indemnification action against the contractor brought the litigation between the contractor and the insurers "into the realm of a concrete controversy which this Court may properly adjudicate." *Id.* at \*6. The court said its "construction of terms in a contract that facially only concerns [the insurer] and [the railroad company] will have a direct impact on [the contractor's] rights in a pending [indemnification] action." *Id.* at \*7.

At least one court in this Circuit has explicitly followed *Colony National*. In *Diamond State Insurance Co. v. Boys' Home Ass'n,*

*Inc.*, 2014 WL 4626597 (M.D. Fla. Sept. 16, 2014), an insurer filed a declaratory action against the named insured and an additional insured. The insurer sought a declaration that its policy did not cover claims asserted against the additional insured in a separate case (in which the named insured was not involved). The court dismissed the named insured for lack of a justiciable controversy because "unlike the *Colony National* case, the Court has no indication that . . . the additional insured[] has separately demanded indemnification from [the named insured], or that [the named insured] has contracted to indemnify [the additional insured]." *Id.* at 7. The court concluded: "In the absence of any allegations that . . . one of the other Defendants has demanded indemnification from [the named insured] for the conduct alleged in the Underlying Action, the Court finds no actual controversy between [the insurer] and [the named insured] in this matter." *Id.*

*Colony National* and *Diamond State* both suggest that CECO is part of a justiciable controversy here. Both cases say the named insured is a proper party in a declaratory action to determine the additional insured's coverage if the additional insured is separately seeking indemnification from the named insured for the same underlying event.

That rule plainly applies here.  This is a declaratory action about the extent to which Colonial is entitled to coverage for a gasoline leak under two insurance policies.  One of those policies is the Colony Policy under which CECO is the named insured and Colonial is an additional insured.[6] Colonial (the additional insured) has separately filed an indemnification claim against CECO (the named insured) for damages caused by the same gasoline leak underlying this declaratory action.  As in *Colony National*, this means the declaratory action "will have a direct impact on [CECO's] rights in a pending [indemnification] action," including on CECO's exposure and potential coverage in that case. *Colony Nat. Ins.*, 2014 WL 1159776, at *7.  That makes CECO a proper party to this declaratory action and establishes a "concrete controversy which this Court may properly adjudicate." *Id.* at *6.

Indeed, CECO's interest in the Colony Policy (and thus this case) has been both concrete and significant since at least 2018 when Colonial demanded $20 million from CECO for damages caused by the gasoline

---

[6] CECO and Colony both admit that Colonial is an additional insured under the Colony Policy.  (*See* Dkts. 54 ¶ 6; 77 ¶ 6.)

leak. (Dkt. 68-1 at 14.)[7] Ever since then, CECO has had every reason to minimize its responsibility, and maximize its coverage, for the leak. Both of those objectives are implicated in this litigation. First, AIG seeks a declaration that the leak "implicates Coverage A of the Colony Policy," which requires a finding that CECO caused the gasoline leak. (*See* Dkt. 86-1 at 2, 13, 18, 35.) That finding would undermine CECO's efforts to avoid liability for the leak — which, presumably, is why CECO has denied causal responsibility in the indemnification action. *See Colonial Pipeline Co. v. CECO Pipeline Services Co.*, No. 2:19-cv-01334-KOB (N.D. Ala. Sept. 11, 2019), ECF No. 5. Second, AIG seeks a declaration that Colony must provide primary, non-contributory coverage to Colonial for the gasoline leak. If the Court issues that declaration, Colonial will likely use up the full $5 million available under the Colony Policy, leaving no coverage for CECO against Colonial. That means CECO could not call on Colony to cover its defense costs in the indemnification action. (*See* Dkt. 86-1 at 17 ("Our duty to defend ends when the applicable Limit of

---

[7] Colonial's $20 million demand, and CECO's refusal to pay, made "the practical likelihood" that Colonial would sue CECO "very high." *GTE Directories Pub. Corp. v. Trimen Am., Inc.*, 67 F.3d 1563, 1569 (11th Cir. 1995). That Colonial ultimately did sue "reinforces" that assessment. *Id.*

Liability has been exhausted by the payment of loss.").)  Nor, presumably, could it seek indemnification from Colony for other covered losses arising from the leak.  CECO's immediate and concrete interest in the Colony Policy — and in the declarations sought by AIG — only underscores that CECO belongs in this case and that a justiciable controversy exists here.[8]

CECO does not cite a single case to the contrary.[9]  It instead argues that "AIG does not seek any relief from CECO."  (Dkts. 68 at 2; 71 at 7.) But that is wrong.  AIG seeks declarations that (1) "CECO was obligated

---

[8] Courts, without expressing jurisdictional concerns, often permit named insureds to participate in coverage disputes between insurers and additional insureds.  *See Amerisure Ins. Co. v. FCCI Ins. Co.*, 2019 WL 1877311, at *2–3 (M.D. Fla. Apr. 26, 2019) (Article III jurisdiction existed over coverage dispute because the insurer "joined the insurance companies and their insureds," including a named insured whose own coverage was not at issue); *Great Am. Assurance Co. v. Williamson*, 2018 WL 6829786, at *3 (M.D. Fla. Dec. 27, 2018) (ordering FIT to be added as a defendant because plaintiff insurers "seek declarations that Williamson is not covered under the Alliance policy—a policy in which FIT is the named insured"); *S.-Owners Ins. Co. v. Search Auto. Techs., LLC*, 2012 WL 13024102, at *3 (S.D. Fla. Sept. 4, 2012) (named insured was "required party" in a declaratory action about the additional insured's coverage); *see also Am. Int'l Ins. Co. v. Heltzer*, 2001 WL 225031, at *2 (D. Md. Feb. 7, 2001) ("As the named insureds of the policy at issue, the Heltzers are proper parties to be joined to a declaratory judgment action that will determine, as a matter of law, the scope of coverage available under their insurance policy.").

[9] CECO cites general Article III principles or, in many cases, nothing at all.

to add Colonial as an additional insured under the Colony Policy," and (2) "CECO was obligated to ensure that the Colony Policy provided coverage to Colonial on a primary, non-contributory basis with respect to Colonial's insurance and self-insurance program." Although the parties apparently agree with the first declaration, nothing suggests they agree with the second. (*See, e.g.*, Dkts. 54 ¶¶ 72–73, 79–80 (CECO denying AIG's allegations); 77 ¶¶ 72–73, 79–80 (Colony denying AIG's allegations).)[10] The coverage obligations of AIG and Colony may depend on this disputed declaration because the Colony Policy says it is primary and non-contributory if CECO agreed to obtain primary insurance for an additional insured. Indeed, AIG disclaims coverage precisely because it says CECO agreed to obtain primary insurance for Colonial under the Colony Policy. (Dkt. 86 ¶¶ 2–8.) So not only is CECO wrong to say AIG seeks no relief against CECO, but the relief AIG *does* seek is central to resolving this coverage dispute. And because any such resolution requires an adjudication of CECO's contractual obligations, it would be

---

[10] If the parties did agree with both declarations, there may be an argument that CECO should be dismissed on mootness grounds. The Court need not decide that issue, however, since it remains hypothetical at this point.

17

odd to proceed here without CECO as a named party. The Court declines to do so.

CECO also claims its lack of contractual privity with AIG precludes any case or controversy between them. (Dkts. 68-1 at 7; 71 at 7.) The Court considered and rejected that argument when it granted AIG leave to file its third-party complaint. (*See* Dkts. 32 at 4–5; 39 at 5–9.) CECO cites no authority requiring the Court to revisit that conclusion. And persuasive authority suggests it need not.

In *Steadfast Insurance Co. v. Berkley National Insurance Co.*, 217 F. Supp. 3d 904 (S.D.W. Va. 2016), a gas company and a contractor entered into a master services agreement. *Id.* at 908. The agreement required the contractor to obtain insurance and to name the gas company as an additional insured. *Id.* The agreement also required the insurance to be primary over the gas company's other insurance. *Id.* The contractor obtained insurance as required by the agreement. *Id.* at 908–09. The insurance policy listed the contractor as the named insured but also covered "any person or organization with whom [the contractor] agrees in writing . . . to add as an additional insured." *Id.* at 909. The policy limited its coverage of the additional insured to "the lesser of: (a) the

coverage and/or limits of this policy; or (b) the coverage and/or limits required by the [master services agreement]." *Id.*

An accident later happened during the contractor's work. *Id.* The gas company incurred losses for which it sought coverage from the contractor's insurer. *Id.* The insurer denied the claim. *Id.* The gas company's own insurers then filed a declaratory action against the gas company, the contractor, and the contractor's insurer. *Id.* The plaintiff insurers sought declarations that the contractor's insurance policy provided primary, "additional insured" coverage to the gas company. *Id.*

The court found there was Article III jurisdiction even though the plaintiff insurers were not parties to the master services agreement (or the contractor's insurance policy) and thus were not in privity with the contractor. *Id.* at 910. The court said the master services agreement was central to resolving the dispute because it helped determine the coverage available under the contractor's insurance policy. *Id.* at 910–11. The court then said that, "because the [master services agreement]— a contract to which only the defendants are parties—is intimately intertwined with the priority of all parties' coverage obligations," plaintiffs' lack of privity with those defendants did not preclude

Article III jurisdiction.   *Id.* at 911.   Significantly, the court said its decision was consistent with Eleventh Circuit law including because the parties were competing insurers and their insureds (even if they were not all in privity with one another).   *See id.* at 911 n.5; se*e also Provident Life & Acc. Ins. Co. v. Transamerica-Occidental Life Ins. Co.*, 850 F.2d 1489, 1493 (11th Cir. 1988) (although "no legal relationship existed between the insurers[,] [h]ad the insurers jointed the insured in their action, a definite and substantial controversy would exist" under Article III); *Amerisure Ins.*, 2019 WL 1877311, at *2–3 (Article III jurisdiction existed over coverage dispute because the plaintiff insurer "joined the insurance companies and their insureds," including a named insured not in privity with the plaintiff insurer).

All of this is bad news for CECO's privity argument.   As in *Steadfast*, CECO's Master Services Agreement affects whether the Colony Policy offers primary, "additional insured" coverage to Colonial for the gasoline leak.   As in *Steadfast*, that issue is central to resolving "the priority of all parties' coverage obligations" in this declaratory action.   And, as in *Steadfast*, the parties here are competing insurers and their insureds.   If the lack of contractual privity did not matter in

20

*Steadfast* — whose facts are strikingly similar to those here — it is hard to see why it matters in this case.  The Court finds it does not.[11]

As the Supreme Court explained almost a century ago, there is a difference between cases involving "a hypothetical state of facts" (where no jurisdiction exists) and "concrete case[s] admitting of an immediate and definitive determination of the legal rights of the parties" (where jurisdiction does exist).  *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 241 (1937).  Our case falls into the latter category.  If the Court gives AIG the declaration it wants — that "CECO was obligated to ensure that the Colony Policy provided coverage to Colonial on a primary, non-contributory basis" — that will impact AIG's coverage obligations to Colonial and thus the relief to which Colonial is entitled in its pending

---

[11] CECO also points out that (1) Colonial previously demanded $20 million from CECO and Colony for the gasoline leak and (2) Colony then offered Colonial $5 million "in an effort to reach an amicable resolution of this matter regardless of the potential liability and coverage issues present in this dispute." (Dkt. 68-1 at 14.)  But CECO does not clearly explain why this precludes Article III jurisdiction over CECO.  And the Court finds it does not.  This case is largely about whether Colony's policy is primary (and non-contributory) to AIG's.  Colony disputes that it is.  Whether Colony is right depends, in part, on whether CECO agreed to make the Colony Policy primary (and non-contributory) to Colonial's other insurance.  CECO belongs in this case at least until that issue is resolved.

claims against AIG.  It may mean, as AIG argues, that AIG need not cover Colonial's losses until Colony pays its policy limits first.  Or it may mean that AIG need only cover Colonial's losses under some kind of shared arrangement with Colony.  Perhaps it means something else.  The exact impact will no doubt be litigated in this case and the Court takes no position on the issue right now.  *That* there will be an impact, however, seems clear.  And that impact will apply to live, disputed insurance claims actually pending in this Court.  The litigation between AIG and CECO therefore involves "concrete" issues that matter rather than "hypothetical" issues that do not. !

The bottom line is that CECO is part of a justiciable controversy under Article III.  The Court thus denies CECO's motion to dismiss for lack of subject matter jurisdiction.

## III.  Motion to Dismiss Under Rules 12 and 14

CECO also moves to dismiss AIG's third-party complaint for failure to state a claim under Rules 12 and 14 of the Federal Rules of Civil Procedure.  (Dkt. 68.)  The Court denies this motion as untimely because

it comes six months after AIG filed its complaint and more than three months after CECO filed its answer.[12]

First, the motion is untimely under the Federal Rules of Civil Procedure. "Under the unambiguous, mandatory language of Rule 12(b), a motion to dismiss must be made *before* an answer is filed." *Tamiami Condo. Warehouse Plaza Ass'n, Inc. v. Markel Am. Ins. Co.*, 2019 WL 4863378, at *2 (S.D. Fla. Oct. 2, 2019). The same deadline is widely thought to govern Rule 14 motions to dismiss. *See* 6 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1460 (3d ed. April 2020 Update) ("As a matter of sound practice, a challenge to the impleader should be made as promptly as possible—typically prior to filing a third-party answer.").[13] Because CECO moved to dismiss more

---

[12] CECO's motion to dismiss for lack of an Article III controversy is not untimely, however, because "Article III is a jurisdictional requirement that cannot be waived and, as such, may be brought up at any time in the proceeding." *Heckman v. SBE ENT Holdings, LLC*, 2019 WL 1468555, at *2 (S.D. Fla. Feb. 25, 2019); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

[13] *See also Caplen v. Sturge*, 35 F.R.D. 176, 177 (E.D. Pa. 1964) ("[T]he third party defendant in this action has completely waived any objections to its joinder by filing an answer."); *United States v. Costa*, 11 F.R.D. 492, 495 (W.D. Pa. 1951) ("the reasoning underlying the requirement of Rule 12(b) that a motion to dismiss be made before

than three months after filing its answer, its motion is untimely under Rules 12 and 14.

CECO's motion is also untimely under the Local Rules.  Local Rule 7.1(A)(2) states that, subject to inapplicable exceptions, "[a]ll . . . motions must be filed WITHIN THIRTY (30) DAYS after the beginning of discovery unless the filing party has obtained prior permission of the Court to file later."  CECO began discovery "[i]mmediately upon CECO's filing of its answer to the Third-Party Complaint."  (Dkt. 69 at 8 n.3.) It then waited about three months before seeking dismissal.  That violates the Local Rules.

Finally, CECO's motion violates the scheduling order governing this case.  The Court's Scheduling Order (Dkt. 26) incorporates the parties' Joint Preliminary Report and Discovery Plan (Dkt. 25), which states: "All motions should be filed as soon as possible."  (Dkt. 25 at 9); *see Goolsby v. Gain Techs., Inc.*, 362 F. App'x 123, 127, 131 (11th Cir. 2010) (scheduling order approved the parties' joint preliminary report

---

pleading is applicable" to Rule 14 motions); *Ark. Bankers Life Ins. Co. v. Tomerlin*, 1999 WL 1096106, at *2 (Ark. Ct. App. Dec. 1, 1999) ("Cases under the similar Fed. R. Civ. P. 14 have held that the objection to an improperly-filed third-party complaint must be timely.").

and discovery plan, and thereby incorporated the deadline listed in that filing).[14]  CECO did not file its motion as soon as possible.  It received AIG's complaint on August 19, 2019, and then waited five and a half months before seeking dismissal on February 4, 2020.  (*See* Dkt. 45.) It did this even though none of its arguments depend on anything that happened in the interim and even though the Court gave CECO a seven-week extension to figure out how to respond to the complaint.  (*See* Dkts. 48; 49.)   CECO admits it made a strategic decision to answer the complaint.  (*See* Dkt. 71 at 6 ("CECO opted to answer the third-party complaint in the hopes that it would not need to expend significant resources.").)   That it now regrets that decision does not excuse its untimely filing.  *See RTG Furniture Corp. v. Indus. Risk Insurers*, 2008 WL 11331987, at *2 (S.D. Fla. June 3, 2008) ("Plaintiff's strategic decision to wait and see . . . does not amount to reasonable cause to excuse its untimely filing."); *see also Mangham v. Westin Hotel Mgmt., LP*, 2017 WL 4540712, at *5 (N.D. Ga. Oct. 11, 2017) ("The Court must enforce its

---

[14] The Scheduling Order also incorporates the Local Rules under which CECO's motion is untimely for the reasons explained above.  The Court amended its Scheduling Order in April 2020, two months after CECO filed its motion to dismiss.  (Dkt. 85.)

deadlines to ensure fairness to all sides and to all litigants, including those who work hard—and make difficult choices—to meet the [Court's] deadlines.").

The Court denies CECO's motion to dismiss for failure to state a claim because it is untimely under the Federal Rules of Civil Procedure, the Local Rules, and the Court's Scheduling Order.

## IV.   Conclusion

The Court **GRANTS** Third-Party Defendant CECO Pipeline Services Company, Inc.'s Motion to Supplement Its Motion to Dismiss the Third-Party Complaint (Dkt. 79) and **DENIES** its Motion to Dismiss the Third-Party Complaint (Dkt. 68).

**SO ORDERED** this 22nd day of May, 2020.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE